SCHUSTER et al., Appellants,

v.

KOKOSING CONSTRUCTION COMPANY, INC., Appellee.

[Cite as *Schuster v. Kokosing Constr. Co., Inc.*, 178 Ohio App.3d 374, 2008-Ohio-5075.]

Court of Appeals of Ohio,
Fifth District, Ashland County.

No. 07COA049.

Decided Sept. 30, 2008.

Christopher J. Regan and James B. Stoneking, for appellants.

Michael J. Valentine, for appellee.

---

FARMER, Judge.

{¶ 1} During the winter of 2006, appellee, Kokosing Construction Company, was engaged in a highway construction project in the area where U.S. 250 dead-ends into U.S. 42, forming a "T" intersection. A stop sign is located on U.S. 250 to alert approaching motorists. As a result of the construction work, appellee removed the stop sign and relocated it away from the edge of the roadway.

{¶ 2} On January 6, 2006, appellant, James Schuster, was traveling on U.S. 250 toward U.S. 42. Appellant did not see the stop sign, crossed through the intersection, and careened down an embankment, crashing into a ditch. He received injuries, as did his wife and son, who were passengers in the vehicle.

{¶ 3} On April 14, 2006, appellant, together with his wife and son, filed a complaint against appellee, claiming negligence regarding the stop sign. On June 30, 2006, appellants filed an amended complaint to include the city of Ashland as a party defendant. Appellants dismissed the city of Ashland on July 18, 2007.

{¶ 4} On July 26, 2007, appellee filed a motion for summary judgment, claiming that appellants failed to establish the existence of a duty, a breach of that duty, and an injury resulting therefrom. By a judgment entry filed September 7, 2007, the trial court denied the motion.

{¶ 5} A jury trial commenced on November 6, 2007. At the close of appellants' case-in-chief, appellee moved for a directed verdict. The trial court granted the motion, finding that there was no evidence to establish that the location of the stop sign violated Section 2B.06 of the Ohio Manual of Uniform Traffic Control Devices. A judgment entry journalizing this decision was filed on November 16, 2007.

{¶ 6} Appellants filed an appeal, and this matter is now before this court for consideration. Assignments of error are as follows:

I

{¶ 7} "The trial court erred in directing a verdict in favor of the defendant, Kokosing."

II

{¶ 8} "The trial court erred in ruling that the plaintiffs' expert, Kevin Theriault, could [not] render an opinion that the placement of the stop sign violated MUTCD standards."

I

{¶ 9} Appellants claim that the trial court erred in directing the verdict for appellee. We agree.

{¶ 10} The standard for granting a directed verdict is set out in Civ.R. 50(A)(4) as follows:

{¶ 11} "When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

{¶ 12} In their complaint filed April 14, 2006, appellants alleged the following at ¶ 6:

{¶ 13} "The Defendant, Kokosing, was negligent in one or more of the following particulars:

{¶ 14} "(a) in failing to design the intersection in a reasonably safe manner and in accordance with applicable rules, regulations and industry standards;

{¶ 15} "(b) in failing to provide appropriate signage warning of the approaching intersection;

{¶ 16} "(c) in temporary locating certain signage (specifically, a stop sign) in a manner that prevented it from reasonably being seen by drivers;

{¶ 17} "(d) in failing to provide appropriate lighting to make the intersection and signage clearly visible;

{¶ 18} "(e) in failing to take prompt and appropriate remedial steps upon being advised of at least three prior crashes occurring at the same intersection within a two week time period; and

{¶ 19} "(f) other negligent acts or omissions."

{¶ 20} In its November 16, 2007 entry directing the verdict for appellee, the trial court concluded the following:

{¶ 21} "The evidence, construed most favorably to the Plaintiffs, established that the State of Ohio inspected the work done by Defendant Kokosing, including the placement of the STOP sign at issue in this case, and accepted the work, signed off on the completed project and opened the road to the traveling public prior to the accident in this case. That evidence establishes that Defendant Kokosing's placement of the STOP sign was in compliance with Section 2B.06, absent testimony to the contrary. The Plaintiffs presented no evidence to the contrary in their case-in-chief.

{¶ 22} "The Plaintiffs argued to the Court that the question of whether the STOP sign's placement was in compliance with Section 2B.06 of the Manual of Uniform Traffic Control Devices and/or was negligent was a question of fact to be decided by the jury. The Court concurs with that position. However, just as a jury cannot decide a doctor's negligence without expert opinion testimony, the jury in this case could not decide whether the location of the STOP sign was negligent without expert opinion testimony. It is undisputed that the Plaintiffs did not present any expert testimony establishing that the sign's placement violated Section 2B.06 or that the sign's placement was negligent."

{¶ 23} We find that the trial court's decision addressed only the Ohio Manual of Uniform Traffic Control Devices and did not address the other issues raised by the complaint.

{¶ 24} A reading of the trial testimony and a review of the evidence in a light most favorable to appellants establish the following facts:

{¶ 25} 1. The stop sign was replaced after the completion of the construction project and was not in compliance with the specifications of the contract, even though appellee was specifically instructed to comply.

{¶ 26} 2. The 12–foot placement of the stop sign from the white edge line was discussed, but not complied with. The stop sign was 20 feet from the white edge line.

{¶ 27} 3. On November 10, 2005, an Ohio Department of Transportation engineer opened the roadway with the stop sign in the wrong place.

{¶ 28} 4. The Ohio Department of Transportation accepted the work that appellee had performed.

{¶ 29} 5. On December 14, 2005, the Ohio Department of Transportation requested a bid to correct the placement of the stop sign to be compliant with the 12–foot specification.

{¶ 30} 6. The regulations in the Ohio Manual for Uniform Traffic Control Devices govern the placement of the stop sign.

{¶ 31} 7. The accident occurred prior to the correction of the stop-sign placement.

{¶ 32} 8. There was expert opinion testimony from Kevin Theriault that the stop sign's placement was a factor in appellant's failure to see the sign.

{¶ 33} 9. There was testimony that a headlight would not illuminate a stop sign placed 20 feet from the white edge line.

{¶ 34} 10. Appellant testified that he was aware that there should be a stop sign in the area and was searching for it. He never saw the stop sign.

{¶ 35} 11. Plaintiff's Exhibit 19, the letter from the Ohio Department of Transportation, set forth the placement requirements and appellee's failure to fulfill those requirements.

{¶ 36} We conclude that despite the lack of engineering expertise by appellants' witness, Kevin Theriault, there was ample evidence in the record, when construed most favorably for appellants, that a jury could find negligence on behalf of appellee. Plaintiff's Exhibit 19, signed by an engineer from the Ohio Department of Transportation, was sufficient to meet the burden. Further, there was testimony from appellant and Theriault that the stop sign was not visible at 20 feet from the white edge line.

{¶ 37} Upon review, we find that the trial court erred in granting the directed verdict to appellee.

{¶ 38} Assignment of error I is granted.

## II

{¶ 39} Appellants claim that the trial court erred in precluding and limiting Theriault's testimony. We disagree.

{¶ 40} The admission or exclusion of evidence lies in the trial court's sound discretion. *State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343. In order to find an abuse of that discretion, we must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140.

{¶ 41} The trial court is the gatekeeper on issues of admissibility and qualifications of an expert witness. Evid.R. 104(A). Qualification of an expert is controlled by Evid.R. 702. Further, under Evid.R. 701, a witness may testify as

to his perceptions that are "helpful to a clear understanding of [his] testimony or the determination of a fact in issue."

{¶ 42} Contained within some 20–plus pages of the transcript is the dialogue between the trial court and counsel as to the limitations on Theriault's testimony. The most definitive ruling was at the beginning of the colloquy:

{¶ 43} "THE COURT:  All right, at this point, based on the qualifications and the questions that have been asked, I am not going to allow this witness to give an opinion concerning whether or not the sign was properly placed, all right, in accordance with the Uniform Traffic Manual, that is based on the qualifications that you have done thus far."

{¶ 44} The trial court further clarified the decision on the issue as it related solely to the manual's standards as follows:

{¶ 45} "THE COURT:  Because my ruling is—the basis of the ruling is, the manual doesn't have a set distance standard in the manual, and the diagram does not say that it has to be within the specific locations.  That is just, see as figure A.  There is a discretionary element of this, and the ruling was that he cannot give an opinion."

{¶ 46} Section 2B.06 of the Ohio Manual of Uniform Traffic Control Devices states, "The stop sign shall be located as close as practical to the intersection it regulates, while optimizing its visibility to the road user it is intended to regulate."  This section is labeled as a "standard," which is defined in the manual at Section 1A.09 as follows:

{¶ 47} "Standard:

{¶ 48} "This Manual describes the application of traffic control devices, but shall not be a legal requirement for their installation.

{¶ 49} "Guidance:

{¶ 50} "The decision to use a particular device at a particular location should be made on the basis of either an engineering study or the application of engineering judgment.  Thus, while this Manual provides Standards, Guidance, and Options for design and application of traffic control devices, this Manual should not be considered a substitute for engineering judgment.

{¶ 51} "Engineering judgment should be exercised in the selection and application of traffic control devices, as well as in the location and design of the roads and streets that the devices complement."

{¶ 52} Pursuant to that section, because Theriault was not an engineer, he could not testify as to engineering judgment.  The trial court specifically stated that Theriault could not give an opinion on whether the stop-sign placement

violated the manual. The questions and answers that precipitated this ruling were as follows:

{¶ 53} "Q. Now, that is the diagram that came to Kokosing from ODOT?

{¶ 54} "A. Yes.

{¶ 55} "Q. What does that document reflect?

{¶ 56} "A. This reflects the proper placement of the stop sign at the intersection.

{¶ 57} "Q. Having evaluated the case, was the stop sign there January 2nd placed consistently with the diagram?

{¶ 58} "A. No, it was not.

{¶ 59} "MR. VALENTINE: Objection, your Honor, if we could approach on this, I do have an issue with the question."

{¶ 60} Although the trial court and counsel wove themselves through a convoluted argument, Theriault's opinion as to sign placement was not stricken and was reinforced after the discussion between the trial court and counsel:

{¶ 61} "Q. Was the stop sign as it existed placed consistent with the diagram?

{¶ 62} "A. No.

{¶ 63} "Q. Was it placed inconsistent with the diagram in the Ohio Uniform Manual?

{¶ 64} "A. No.

{¶ 65} "Q. Given your training, what is your opinion as to the cause of the wreck?

{¶ 66} "A. It would be the failure of the Plaintiff to visibly see the sign as they approached the intersection.

{¶ 67} "Q. What was the factors that went into the failure to see the stop sign?

{¶ 68} "A. The sign, the position as it was on the day of the crash, and the weather conditions on the night of the crash.

{¶ 69} "Q. What was it about the placement of the sign that led it not to be seen?

{¶ 70} "A. It was not consistent with where it is in the diagram."

{¶ 71} Given the specific landscape of the testimony, we cannot find that the trial court abused its discretion in so limiting the inquiry. As we found in assignment of error I, the complaint was broadly drawn as to general negligence. Although guidelines from the manual would have been a more definitive opinion, it was not fatal to the general negligence cause of action.

{¶ 72} Assignment of error II is denied.

{¶ 73} The judgment of the Court of Common Pleas of Ashland County, Ohio is hereby reversed.

Judgment reversed.

HOFFMAN, P.J., and GWIN, J., concur.